**Bobbye Inethil HOLLAND, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 40320.**

Court of Criminal Appeals of Texas.

May 10, 1967.

Wardlow Lane, Center, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

OPINION

BELCHER, Judge.

The conviction is for murder with the punishment assessed at two years.

Trial was had and notice of appeal was given subsequent to January 1, 1966.

It is undisputed that the appellant killed the deceased by shooting him in the chest with a .22 caliber rifle while they were alone in their home shortly after midnight.

The appellant testified that she and the deceased went to a dance hall in separate cars on the night of the killing, he first returned home, and she arrived home about midnight; that soon after her arrival, the deceased, who was drunk, asked her where his pistol was, began cursing her and abusing her physically, saying, "I am going to

kill you," and he next said, "I am fixing to blow your goddamn brains out" as he came toward her, and she said, "Stop, stop," fired two shots in the ceiling with a .22 caliber rifle, but when he kept coming she shot him because she was in fear of bodily injury and her life.

In the absence of a state's brief, its position is not presented except as reflected by the record on appeal.

As grounds of error, the appellant insists that the trial court erred in admitting the testimony of Officers Mitchell and Sowell of claimed oral statements which she made to them after they started to the hospital and also other statements for almost two hours because they were not res gestae and further, because she was under arrest at the time.

The testimony pertaining to the making of the oral statements by the appellant was developed on the voir dire of Officers Mitchell and Sowell, the objections directed by the appellant to the admission of said statements in evidence before the jury were overruled, and to such action of the court the appellant reserved her exception.

The evidence reveals that the oral statements complained of were made under the following facts and circumstances:

The shooting took place shortly after the appellant arrived home around midnight, and she telephoned the officers and the hospital, telling them she had shot her husband, and two city officers arrived at her home about 12:25 a. m., when the appellant told the officers at the front door she had shot her husband, they could see him lying on the floor. After they examined him, she showed them the .22 caliber rifle she used to shoot him. On arrival of the ambulance the officers assisted in placing him in it. At this time the family physician arrived and he followed the ambulance to the hospital. In referring to the officers the appellant said, "They were taking me, the policeman said 'Come on'" and they went to the hospital about 12:45 a. m., with Officer Bailey driving the police car and Officer Sowell and the appellant riding in the rear seat. The deceased lived about fifteen minutes after reaching the emergency room. In a short time Officers Mitchell, Sowell, and Bailey, and the appellant returned to appellant's home in the police car. After their arrival and while going from the car to the house the state's evidence reflects that she made the statement that she drove up against deceased's car in the driveway so he couldn't leave, but the appellant denied making such statement.

The court sustained the state's objection to the question asking the appellant if she felt that she was in charge and under the control of the officers after they arrived at her house, but later she did testify that an officer told her to get "a wrap because it was going to be cold down there in jail."

In addition to the above facts, Officer Sowell testified that the appellant was never arrested until about 2 a. m., when they were at the hospital the second time, but that after she told him she had shot her husband he would not have let her leave or go anywhere. Officer Mitchell testified to substantially the same facts as Officer Sowell except he first saw the appellant at the hospital on her first trip. Officer Bailey did not testify.

From all the facts and circumstances in evidence, it is concluded that the appellant was under arrest at the time she told Officer Mitchell that she had blocked deceased's car in the driveway, and that such statement was not res gestae. 24 Tex.Jur. 2d 257, Sec. 659; Jones v. State, 44 Tex. Cr.R. 405, 71 S.W. 962; Willoughby v. State, 87 Tex.Cr.R. 40, 219 S.W. 468; De Lira v. State, 164 Tex.Cr.R. 194, 297 S. W.2d 953. The disposition makes it unnecessary to consider the admissibility of the oral statements other than the one set out herein.

Among the oral statements, which the appellant contends were not admissible in evidence on the grounds that they were not res

gestae and she was under arrest at the time, are those revealed by the following testimony of Officer Mitchell in stating what she said on their return to her house:

"Q Did she (appellant) say anything Mr. Mitchell from—when you got out of the car walking to the house?

"A Yes, sir.

"Q What did she say?

"A *She said 'See here I drove right up against his car so he couldn't leave'.*

"Q How many cars were in the driveway?

"A Two."

For acquittal, the appellant relied solely upon self-defense; and the court charged the jury upon the law applicable thereto.

The court also charged the jury upon the law of provoking the difficulty. To the giving of this charge the appellant duly reserved her exception.

The testimony that the appellant drove her car behind the deceased's car so he could not leave could be used by the jury to show a plan, scheme and design to carry out her threats, and also could be used to combat her plea of self-defense. Further, the blocking of his car in the drive-way could also be used by the jury in support of the state's position that she provoked the difficulty, if she did, as the jury was charged. The admission of said statement, which was not res gestae, allowed the state to prove by the testimony of the officer having her under arrest, an oral statement made by the appellant, which could be used by the jury as an incriminative fact tending to establish her guilt.

It is evident that the admission of appellant's statement made at the time of her return home from the hospital was prejudicial to her rights and deprived her of a fair and impartial trial.

The judgment is reversed and the cause is remanded.