**UNITED STATES of America,**
**Appellee,**

v.

**Melchor TAFOYA, Jr., Appellant.**

**No. 71-1567.**

United States Court of Appeals,
Tenth Circuit.

May 15, 1972.

4. Ex parte United States, 287 U.S. 241, 53 S.Ct. 129, 77 L.Ed. 283 (1932).

5. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

8. *Id.*

Turner W. Branch, of Branch & Dixon, Albuquerque, N. M., for appellant.

Richard J. Smith, Asst. U. S. Atty. (Victor R. Ortega, U. S. Atty., and Victor R. Seizemore, Asst. U. S. Atty., on the brief), for appellee.

Before HILL, SETH, and DOYLE, Circuit Judges.

SETH, Circuit Judge.

Melchor Tafoya, Jr., appeals from a judgment of conviction entered on a jury verdict, for the possession of heroin in violation of 21 U.S.C. § 174.

The evidence in this case, uncontested on appeal, reveals these facts: At the time of his arrest, the defendant, along with his grandmother, his sister, and other members of his family, occupied three adjacent houses in Albuquerque, New Mexico. On the afternoon of April 14, 1971, several members of the Albuquerque Police Department conducted a search of these houses pursuant to a validly executed search warrant. In the course of that search, thirty-two caps of suspected heroin were found in the house in which the defendant and his grandmother resided. The defendant who was found in one of the other houses was placed under arrest and, according to the testimony of the arresting officer, was also advised of his constitutional rights. The defendant was then handcuffed and placed in the police car. Meanwhile, suspected heroin was also found in the house in which defendant's sister resided and she was also being placed under arrest. While waiting in the police car, the defendant saw officer Brown taking the defendant's sister into custody. Upon seeing this, the defendant exclaimed, "What are you arresting my sister for? She had nothing to do with it. All of the stuff was mine."

The defendant was then taken to the police station where he was again ad-

vised of his rights. The defendant thereupon acknowledged that he understood his rights by signing an acknowledgment form. The arresting officer then asked the defendant if he wanted to discuss the charges. The defendant replied that he did not and that he wanted to speak with a lawyer. The arresting officer then crossed out the "waiver of rights" portion of the form and conducted the defendant to the jailing officer and he was placed in jail. Some time later the defendant expressed a desire to speak with officer Brown. About an hour after officer Brown learned of this he received the defendant from the jailer, took him to the interrogation room where, for the third time, he was advised of his rights. The outcome of the ensuing conversation was a confession which was admitted into evidence at trial.

Prior to trial, the defendant moved to suppress the two incriminating statements, the exclamation at the scene, and the confession at the station. After a hearing, the trial court denied the motion finding that the statement at the scene was a "volunteered statement, not the result of interrogation"; that the statement at the station was freely and voluntarily made; and that prior to both statements, the defendant had been fully advised of his constitutional rights.

In accordance with the procedure directed by this court in McHenry v. United States, 308 F.2d 700 (10th Cir.), the trial judge then submitted the statements to the jury with appropriate instructions in order that they might determine what credibility, if any, should be given to them. A verdict was rendered against the defendant and from a judgment entered thereon defendant appeals.

Defendant asserts the following propositions as grounds for reversal: (1) the statement at the scene was inadmissible because it was coerced and involuntary since it was made out of a desire to avoid involving his sister and grandmother, and was made prior to a full advisement of rights; (2) the confession at the station was also inadmissible because having expressly refused to execute the written waiver of rights form, *no* subsequent statement received from him could be used as evidence and, in the alternative, if volunteered statements could be introduced, the Government has not met the "heavy burden" of showing that the defendant made a voluntary, knowing, and intelligent waiver of his right to remain silent and his right to counsel.

■ With regard to the allegation that his statement at the scene was involuntary and coerced, the proper test to be applied was set forth in Rogers v. Richmond, 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961):

> "The attention of the trial judge should have been focused, for purposes of the Federal Constitution, on the question whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined—a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth."

In making this determination, it is necessary to consider all of the facts and circumstances surrounding the making of the admissions or confessions. Brown v. United States, 356 F.2d 230 (10th Cir.); McHenry v. United States, 308 F.2d 700 (10th Cir.); Ruhl v. United States, 148 F.2d 173 (10th Cir.).

■ In the present case, the defendant testified at the hearing that the officers made threats to arrest his grandmother unless he admitted to possession of the heroin found in their house. The officers expressly denied *any* interrogation of the defendant at the scene, especially denying having made any threats. Furthermore, the grandmother was a legitimate subject of police inquiry since the heroin was found in the house in which both she and the defendant resided. Defendant's sister was also a legitimate subject of

police inquiry. She lived in one of the houses covered by the warrant (not that of the defendant) and, after heroin was discovered in her house, she was arrested for possession of heroin *despite* defendant's admission. This evidence militates against the conclusion that the police were merely using the sister or grandmother to extort an admission from the defendant. In order to establish that his admission was coerced or involuntary as a matter of law, defendant must show that he was subject to threats of illegitimate action. Lattin v. Cox, 355 F.2d 397 (10th Cir.); Kimbrough v. Beto, 412 F.2d 981 (5th Cir.). This was not done. The facts were developed at the hearing to quash and before the jury. Upon this record, we must agree with the finding of the trial court that this admission was freely and voluntarily made, and with the conclusion of the jury.

Defendant also claims that this statement was made without the advisement of rights directed by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966). However, the warnings required by that case do not apply because the admission at the scene was obviously not the product of interrogation but was simply a spontaneous utterance volunteered by the defendant. Therefore, whether or not those warnings were given prior to the exclamation, there was no violation of defendant's rights under the Fifth Amendment as construed by the Miranda decision. Anderson v. United States, 399 F.2d 753 (10th Cir.); Parson v. United States, 387 F.2d 944 (10th Cir.); Stone v. United States, 385 F.2d 713 (10th Cir.). Furthermore, even though it is not necessary to the decision, there is ample evidence to support the trial court's finding that those warnings were given in full prior to that statement.

The admissibility of the second statement is dependent upon two issues: (1) having expressly refused to sign the "waiver of rights" form, could the defendant have waived such reservation by offering to make a statement without the aid of counsel, and (2) if so, has the Government sustained its "heavy burden" of proving that the defendant made a voluntary, knowing, and intelligent waiver of his rights?

The present case is not comparable to People v. Fioritto, 68 Cal.2d 714, 68 Cal.Rptr. 817, 441 P.2d 625 (1968), cited by defendant. In that case, the police themselves revived their interrogation of a juvenile defendant, after he had expressly refused to sign a waiver of rights form, on the sole justification that the defendant's two juvenile accomplices had confessed. The California Supreme Court held that such reinterrogation, *initiated by the officers,* was in violation of Miranda v. Arizona, and that the product thereof was inadmissible. Instead the problem presented in the case before us is similar to United States v. Speaks, 453 F.2d 966 (1st Cir.). There the defendant after refusing to sign a waiver of rights form indicated that he wished to speak with one of the Secret Service agents. After this agent had fully advised the defendant of his constitutional rights, a statement was taken and was properly held to be admissible at trial. See also United States v. Ramos, 448 F.2d 398 (5th Cir.); United States v. Crisp, 435 F.2d 354 (7th Cir.).

The record in this case clearly indicates that some time after the defendant had refused to sign the waiver of rights form, he actively sought to speak with one of the officers. Later, the officer whom the defendant had requested to see made certain that the defendant had been advised of his rights and specifically ascertained that the defendant was willing to speak without the aid of counsel. Under these circumstances, the confession of the defendant was received well within the safeguards provided by the Miranda decision.

Finally, the defendant alleges that the Government has not sustained the "heavy burden" of proving that the defendant made a voluntary, knowing, and

intelligent waiver of his rights. Although the express refusal of counsel is not required to find a waiver of that right, Bond v. United States, 397 F.2d 162 (10th Cir.), the evidence in this case amply supports the finding that the defendant expressly indicated his willingness to make a statement, expressly waived his right to counsel, and made his statement immediately after such waiver.

Accordingly, we agree with the determination of the trial court and the jury that the defendant voluntarily, knowingly, and intelligently waived his right to counsel and his right to remain silent with respect to the confession and therefore its admission at trial was proper.

Affirmed.